IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEENAN WILKINS,                           No. 2:16-CV-0475-TLN-CMK-P

      Plaintiff,

  vs.                                                ORDER

JEFF MACOMBER, et al.,

      Defendants.

_____/

      Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (Doc. 1).

      The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne,

1

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) Jeff Macomber; (2) Kelly Harrington; (3) Timothy Lockwood; (4) Stewart; (5) Roth; (6) Martincek; (7) Haynie; (8) Hobart; (9) Saenz; (10) Jones; (11) Kelly; (12) Holmes; (13) Klink; (14) Biyo; (15) Stafford; (16) Wadkins; (17) Ward; (18) Wooder; (19) Effiyong; (20) Swain; (21) Payner; (22) Monroe; (23) Maynes; (24) Scrubbs; (25) Huntz; (26) Moore; (27) Ramirez; (28) Vasquez; (29) David; and (30) Grannelli. Plaintiff states that his complaint raises seven claims.

### Claim 1 - Cruel and Unusual Punishment

Plaintiff claims that his Eighth Amendment rights are being violated by enforcement of a "custom, policy, procedure, and regulation" requiring inmates to double-cell. According to plaintiff, double-celling has created unsafe and inhumane living conditions in the following ways: (1) there is no ladder or other means for inmates to safely get up and down from top bunks; (2) there is only one toilet, requiring him to expose himself daily; (3) some inmates are required to eat meals in their cells, next to dirty toilets and with inadequate eating surfaces; (4) plaintiff is disciplined when his cellmate commits a rules violation; (5) plaintiff is subject to the whims of his cellmate regarding lighting and noise. Plaintiff claims that he has been "forced to endure this unconstitutional condition" by various named defendants, but he does not explain how.

1                     <u>Claim 2 – Denial of Equal Protection</u>

2                Plaintiff claims that the denial of a single cell "as other similarly situated prisoners are allowed" violates his equal protection rights. Plaintiff argues that prison regulations allow for single-cell status "based on documented evidence that a prisoner may not be safely housed in a double cell." According to plaintiff, he has been denied single-cell status solely because he has no history of "cell violence."

               Plaintiff, who appears to be Jewish, also claims that his equal protection rights are being violated because non-Jewish inmates are permitted to attend services in the prison chapel while Jewish inmates may only have "cell-side" services. According to plaintiff, he was told by defendants Wadkins and David that he could not attend religious services in the prison chapel, though plaintiff also alleges that he was told that he could attend Jewish services in the prison chapel on Wednesdays. Plaintiff claims that he has not been "called, ducated, nor allowed to go to Jewish services in the chapel with other prisoners."

                    <u>Claim 3 – Denial of Due Process</u>

               Plaintiff states that he is being denied due process because prison officials "are disregarding the excessive risk to his safety" presented by being double-celled. He also claims that, while he has filed numerous grievances concerning his double-cell status, "prison officials have failed to address the issues at all." Plaintiff claims that he has not been properly evaluated for single-cell status pursuant to prison regulations. According to plaintiff, he had been approved for single-cell status at his prior prison, but upon transfer to his current prison, officials told him they had no record of an approval for single-cell status. Plaintiff alleges that defendant Ramirez falsified the "hearing chrono" to reflect that plaintiff agreed with double-cell status.

/ / /

/ / /

/ / /

/ / /

| | |
|---|---|
| 1 | <u>Claim 4 – Denial of First Amendment Rights</u> |
| 2 | Plaintiff claims that the denial of access to Jewish religious services and Kosher |
| 3 | meals violates his rights under the First Amendment. While plaintiff claims that he began |
| 4 | receiving Kosher meals in September 2015, he states that he still has not been provided with |
| 5 | access to Jewish religious services. According to plaintiff, defendant David – who is the prison |
| 6 | chaplain – began conducting Jewish services on Wednesdays in the prison yard beginning about |
| 7 | October 2015. Plaintiff adds that defendant David falsified a report indicating that he told |
| 8 | plaintiff that he would conduct cell-side services if plaintiff was not approved for services in the |
| 9 | yard. Plaintiff claims that defendant David has repeatedly denied him access to Jewish religious |
| 10 | services. |
| 11 | <u>Claims 5, 6, and 7 – Conspiracy to Interfere with Constitutional Rights</u> |
| 12 | Plaintiff claims that defendants Huntz and Vasquez conspired to remove plaintiff |
| 13 | from single-cell status. Plaintiff alleges that defendant Moore falsified documents indicating that |
| 14 | plaintiff agreed to double-cell status. According to plaintiff, defendants Saenz, Jones, Kelly, |
| 15 | Holmes, Klink, Biyo, Wadkins, Payner, Monroe, Ward, Wooder, Effiyong, and Swain conspired |
| 16 | to double-cell plaintiff. Plaintiff states that defendants Ramirez, Huntz, and Vasquez conspired |
| 17 | to double-cell plaintiff by failing to evaluate him pursuant to state prison regulations. Plaintiff |
| 18 | also claims again that defendant Ramirez falsified documents to indicate that plaintiff agreed to |
| 19 | being double-celled. Plaintiff also alleges that various defendants' failure to act constitutes a |
| 20 | conspiracy. Plaintiff claims that the various defendants' conduct to conspire to deprive him of |
| 21 | his civil rights also violated California Civil Code § 52.1. |
| 22 | / / / |
| 23 | / / / |
| 24 | / / / |
| 25 | / / / |
| 26 | / / / |

## II. DISCUSSION

### A. Cruel and Unusual Punishment

Plaintiff claims that being double-celled violates the Eighth Amendment's prohibition on cruel and unusual punishment. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

In this case, while plaintiff claims that he is "forced to endure this unconstitutional condition" by various named defendants, he does not allege which defendants are responsible or how. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."

Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff will be provided an opportunity to amend his complaint to set forth more specific allegations regarding his Eighth Amendment claim.

### B. Equal Protection

Plaintiff claims that he is being denied single-cell status even though other similarly situated prisoners are granted single-cell status. Plaintiff also claims that non-Jewish prisoners are allowed to attend religious services in the prison chapel but that Jewish prisoners are limited to "cell side" religious services. Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v.

Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Plaintiff's allegations with respect to being double-celled do not state an equal protection claim because he has not alleged that his housing status is the result of any racial or religious discrimination. Plaintiff's allegations with respect to Jewish religious services are unclear and, to some extent, contradictory. Specifically, while plaintiff alleges that he was told by defendants Wadkins and David that he could not attend religious services in the prison chapel, plaintiff also alleges that he was told that he could attend Jewish services in the prison chapel on Wednesdays.

Plaintiff will be provided an opportunity to amend his complaint to clarify his allegations regarding Jewish religious services.

**C.     Due Process**

Plaintiff claims that he has not been properly evaluated for single-cell status pursuant to prison regulations. According to plaintiff, he had been approved for single-cell status at his prior prison, but upon transfer to his current prison, officials told him they had no record of an approval for single-cell status. More specifically, plaintiff alleges that defendant Ramirez falsified the "hearing chrono" to reflect that plaintiff agreed with double-cell status. The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id.

1 | Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.

The court finds that plaintiff has failed to state a due process claim because he has not alleged a protected liberty interest. Specifically, double-cell status does not represent an atypical and significant hardship or present a restraint on plaintiff's freedom not expected from his incarceration.

/ / /

/ / /

/ / /

### D. First Amendment

Plaintiff claims that he is being denied access to Jewish religious services and Kosher meals. The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970). Officials are not, however, required to supply clergy at state expense. See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

Plaintiff's allegations regarding Kosher meals fail to state a claim because plaintiff states that he began receiving Kosher meals in September 2015. Plaintiff's claims regarding access to Jewish religious services are, as discussed above, vague and contradictory. According to plaintiff, defendant David – who is the prison chaplain – began conducting Jewish services on Wednesdays in the prison yard beginning about October 2015. Plaintiff adds that defendant David falsified a report indicating that he told plaintiff that he would conduct cell-side services if plaintiff was not approved for services in the yard. Plaintiff claims that defendant David has repeatedly denied him access to Jewish religious services.

Plaintiff will be provided an opportunity to amend his complaint to clarify his allegations regarding Jewish religious services.

/ / /

/ / /

/ / /

### E. Conspiracy

Plaintiff claims defendants conspired to remove plaintiff from single-cell status. More specifically, plaintiff alleges that defendants Ramirez, Huntz, and Vasquez conspired to double-cell plaintiff by failing to evaluate him pursuant to state prison regulations. Plaintiff also claims again that defendant Ramirez falsified documents to indicate that plaintiff agreed to being double-celled. Plaintiff cannot sustain a conspiracy claim pursuant to 42 U.S.C. § 1985(3) because he has not alleged a race-based invidiously discriminatory animus behind defendants' conduct. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

### III. CONCLUSION

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because some of the defects identified in this order cannot be cured by amendment, plaintiff is not entitled to leave to amend as to such claims. Plaintiff, therefore, now has the following choices: (1) plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the court will address the remaining claims; or (2) plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend; and

2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

DATED: April 26, 2018

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE