1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KEENAN WILKINS, also known as                No.  2:16-CV-0475-TLN-DMC-P
     Nerrah Brown,
12
               Plaintiff,
13                                                FINDINGS AND RECOMMENDATIONS
          v.
14
     JEFF MACOMBER, et al.,
15
               Defendants.
16

17

18          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

19   42 U.S.C. § 1983.  Pending before the Court is Defendants' motion for summary judgment.  See

20   ECF No. 68.  Also before the Court is Plaintiff's motion to allow previously dismissed claims to

21   proceed, which the Court construes as a motion for reconsideration.  See ECF No. 81.

22

23                              **I.  BACKGROUND**

24   **A.     Procedural History**

25          Following screening of Plaintiff's original complaint, this action proceeds on

26   Plaintiff's second amended complaint.  See ECF No. 20.  On September 24, 2019, the Court

27   issued findings and recommendations limiting this action and dismissing claims found non-

28   cognizable.  See ECF No. 23.  The Court also directed service of process as to claims found to be

                                              1

cognizable.  See ECF No. 22.  The District Judge adopted the September 24, 2019, findings and recommendations in full on December 2, 2019.  See ECF No. 28.

As a result of the District Judge's order, the following claims and defendants remain: Claim I against Defendants Macomber, Harrington, and Lockwood; Claim II against Defendant David; and Claim III against Defendants David, Stewart, Macomber, and Giannelli. Plaintiff's Claims IV, V, and VI were dismissed in their entirety.  See id.

Before the Court, and discussed below, is Plaintiff motion to allow dismissed claims to proceed.  See ECF No. 81.

### B.      Summary of Plaintiff's Remaining Claims

In Claim I, Plaintiff alleges five conditions-of-confinement violations, all related to double-cell status.  See ECF No. 20, pgs. 10-13.  First, Plaintiff alleges that he lacked privacy. See id. at 10-11.  Second, Plaintiff claims that the lack of ladder created an unnecessary risk to his safety.  See id. at 11-12.  Third, Plaintiff states that he feared possible harm from cellmates.  See id. at 12-13.  Fourth, Plaintiff alleges that his cell was unsanitary.  See id. at 13.  Finally, Plaintiff claims that the lack of two desks in a shared cell violates the Eighth Amendment.  See id.

In the pending provisions of Claim II, Plaintiff alleges that Defendant Davis denied him access to Jewish religious services because he is an EOP inmate, in violation of his equal protection rights under the Fourteenth Amendment.  See id. at 15.

In Claim III, Plaintiff states that he was denied access to Jewish religious services, in violation of his free exercise rights.  See id. at 16-17.

## II. THE PARTIES' EVIDENCE

### A.      Defendants' Evidence

Defendants' motion is supported by a statement of undisputed facts, ECF No. 68-2, the declaration of Defendants' counsel, ECF No. 68-3, and exhibits attached thereto, ECF Nos. 68-4 (Exhibit A) and 68-5 (Exhibit B) as follows:

Exhibit A      Transcript of Plaintiff's deposition and attached exhibits. See ECF No. 68-4.

| | Exhibit B | Defendants' first set of requests for production of documents and Plaintiff's responses.  See ECF No. 68-5. |

Defendants' statement of undisputed facts also cites heavily to the allegations in Plaintiff's second amended complaint.  See generally ECF No. 68-2.

Plaintiff was permitted to file a sur-reply, to which Defendants responded.  See ECF No. 85.  To this filing Defendants attach the following exhibits:

| | Exhibit A | Complete Office of Appeals file relating to Plaintiff's inmate grievance no. SAC-B-15-02776.[1]  See ECF No. 85-2. |
| | Exhibit B | Informational Chrono dated October 7, 2015.  See ECF No. 85-3.[2] |

**B.** **Plaintiff's Evidence**

In response to Defendants' motion, Plaintiff filed an opposition, ECF No. 74, and supporting declaration, ECF No. 77.  Attached to Plaintiff's declaration at ECF No. 77 are various exhibits as follows:

| | Exhibit A | Declaration of Joseph Cray dated February 5, 2015.  Mr. Cray states that he was Plaintiff's cellmate between April 2015 and December 2016.  Mr. Cray further states that, in December 2015, he jumped down from the top bunk because there was no ladder.  He states that, as a result, he accidently landed on Plaintiff causing injury to Plaintiff's shoulder.  See ECF No. 77, pg. 15. |
| | Exhibit B | Letter from Plaintiff to Defendant Macomber dated August 6, 2014, regarding lack of privacy and ladder in his shared cell.  Letter from Plaintiff to Defendant Harrington dated February 27, 2016, regarding lack of privacy, ladder, and second desk in his shared cell.  Letter from Plaintiff to Defendant Lockwood dated February 27, 2016, regarding lack of privacy, ladder, and second desk in his shared cell.  See ECF No. 77, pgs. 17-19. |

---

[1]    Defendants' counsel states in his declaration that, following receipt of Plaintiff's sur-reply alleging newly discovery evidence – specially, an October 14, 2015, response by Defendant David to Plaintiff's Form 22 request for services – he attempted to locate this document in Plaintiff's inmate file.  See ECF No. 85-1.  Counsel states that he was unable to do so.  See id.  Counsel attaches as Exhibit A to Defendants' response to Plaintiff's sur-reply a complete copy of the Office of Appeals file for Plaintiff's grievance against Defendant David.  See ECF No. 85-2.

[2]    Defense counsel also states in his declaration that, in attempting to locate the October 14, 2015, response by Defendant David, he located an October 7, 2015, "informational chrono" from Defendant David which provides "additional context" to the missing October 14, 2015, document.  See ECF No. 85-1.  Counsel attaches as Exhibit B to his declaration a copy of Defendant David's October 7, 2015, informational chrono.  See ECF No. 85-3.

| | | |
|---|---|---|
| 1 | Exhibit C | Documents relating to Plaintiff's inmate grievance no. SAC-B-15-03188.  <u>See</u> ECF No. 77, pgs. 21-26. |
| 2 | | |
| 3 | Exhibit D | Documents relating to Plaintiff's inmate grievance no. SAC-B-15-02075.  <u>See</u> ECF No. 77, pgs. 28-29. |
| 4 | Exhibit E | Documents relating to Plaintiff's inmate grievance no. SAC-B-15-02776.  <u>See</u> ECF No. 77, pgs. 31-34. |
| 5 | | |
| 6 | Exhibit F | Documents relating to Plaintiff's requests for Jewish religious services.  <u>See</u> ECF No. 77, pgs. 36-39. |
| 7 | Exhibit G | Documents relating to Plaintiff's requests for Jewish religious services.  <u>See</u> ECF No. 77, pgs. 40-58. |
| 8 | | |
| 9 | Exhibit H | Documents relating to Plaintiff's requests for Jewish religious services.  <u>See</u> ECF No. 77, pgs. 60-61. |
| 10 | Exhibit I | Defendant David's responses to Plaintiff's first set of requests for admissions.  <u>See</u> ECF No. 77, pgs. 63-65. |
| 11 | | |

With leave of Court, Plaintiff also filed a sur-reply, ECF No. 80, to Defendants' reply to which he attaches the following exhibits:

| | | |
|---|---|---|
| 14 | Exhibit A | Documents relating to Plaintiff's inmate grievance no. SAC-B-15-02776.  <u>See</u> ECF No. 80, pgs. 8-11. |
| 15 | | |
| 16 | Exhibit B | "Offender Appointment" form dated December 16, 2019.  <u>See</u> ECF No. 80, pg. 13. |

### III.  DISCUSSION

Before the Court are Defendants' motion for summary judgment and Plaintiff's motion for reconsideration of the District Judge's order dismissing certain claims and defendants. <u>See</u> ECF Nos. 68 and 81.  For the reasons discussed below, the Court recommends that summary judgment be granted in Defendant's favor as to all claims remaining in this action, and that Plaintiff's motion for reconsideration be denied as untimely.

**A.**   <u>**Defendants' Motion for Summary Judgment**</u>

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

standard for summary judgment and summary adjudication is the same.  <u>See</u> Fed. R. Civ. P.

56(a), 56(c); <u>see also</u> <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  <u>See</u>

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

> <u>Id.</u>, at 323 (quoting former Fed. R. Civ. P. 56(c)); <u>see also</u> Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  <u>See</u> Fed. R. Civ. P. 56(c)(1); <u>see also</u> <u>Matsushita</u>, 475 U.S. at 586 n.11.  The

opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th

Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436

(9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

/ / /

1     In resolving the summary judgment motion, the court examines the pleadings,

2  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

3  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

4  477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

5  court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

6  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

7  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

8  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

9  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

10  judge, not whether there is literally no evidence, but whether there is any upon which a jury could

11  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

12  imposed." Anderson, 477 U.S. at 251.

13     Remaining in this action are Plaintiff's claims related to the conditions of

14  confinement (Claim I), an equal protection claim (Claim II), and a free exercise of religion claim

15  (Claim III).  In their motion for summary judgment, Defendants argue that they are entitled to

16  judgment as a matter of law on all of Plaintiff's claims.

17          1.     Conditions of Confinement (Claim I)

18     The treatment a prisoner receives in prison and the conditions under which the

19  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

20  and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

21  511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

22  of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

23  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

24  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

25  "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

26  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

27  two requirements are met: (1) objectively, the official's act or omission must be so serious such

28  that it results in the denial of the minimal civilized measure of life's necessities; and (2)

6

subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

"The Constitution 'does not mandate comfortable prisons.'" Farmer, 511 U.S. at 832 (quoting Rhodes, 452 U.S. at 349); see also Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir. 2002); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes, 452 U.S. at 347; Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint, 801 F.2d at 1107; see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); Osolinski, 92 F.3d at 938-39; Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. When considering the conditions of confinement, the court should also consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

/ / /

/ / /

7

1    All of Plaintiff's conditions-of-confinement claims relate to being double-celled

2 with another inmate.  Specifically, Plaintiff alleges that his Eighth Amendment rights were

3 violated because: (1) his cell lacked privacy; (2) his cell lacked a ladder to the upper bunk; (3) his

4 cell had only one desk; (4) his cell was not sanitary; and (5) he feared harm from cellmates.

5                              a.    <u>Privacy</u>

6    Plaintiff claims in the second amended complaint that his Eighth Amendment

7 rights were violated by a lack of privacy in his shared cell.  <u>See</u> ECF No. 20, pg. 10-11.

8 According to Plaintiff:

9    "<u>Daily</u>" Plaintiff's Bodily Privacy Rights was [sic] violated as he
      had to expose his private body parts to his cellmate when he urinated,
10     defecated, and/or bathe[d]."

11                              * * *

12    Plaintiff daily endured humiliation, degradation, etc., as his bodily
      privacy rights were violated as his private body parts were exposed to
13     cellmates.

14    <u>Id.</u>

15    While an inmate's right to privacy remains in a limited capacity, it "must yield to

16 the penal institution's need to maintain security." <u>Cumbey v. Meachum</u>, 684 F.2d 712, 217 (10th

17 Cir. 1982). The Supreme Court has held that this limited privacy right does not extend into their

18 cells because "it would be literally impossible to accomplish the prison objectives . . .if inmates

19 retained a right of privacy in their cells." <u>Hudson v. Palmer</u>, 468 U.S. 517, 527 (1984). The Court

20 further held: "A right of privacy . . .is fundamentally incompatible with the close and continual

21 surveillance of inmates and their cells required to ensure institutional security and internal order."

22 <u>Id</u>. at 527-28.

23    As explained above, prison conditions may be harsh and unpleasant without

24 offending the Constitution.  <u>See Rhodes</u>, 452 U.S. at 347.  And as the Supreme Court has held,

25 this extends to a lack of privacy in a shared cell.  <u>See Hudson</u>, 468 U.S. at 527-28.  Plaintiff's

26 claim is foreclosed as a matter of law.

27  ///

28  ///

8

1

b.      Lack of Ladder

2              Plaintiff alleges that the lack of a ladder to access the top bunk created an unsafe

3 condition of confinement, in violation of the Eighth Amendment.  See ECF No. 20, pgs. 11-12.

4 Plaintiff claims:

5                    There is no ladder or alternative provisions for prisoners to get
                safely up/down from the top bunk in the cell.  A prisoner must unsafely
6                jump/climb up/down from the top bunk.  There is no handle[] nor anything
                to hold onto when climbing up/down from the top bunk.  This unsafe
7                practice must also be done in the dark when the light is off (note: the light
                is unreachable from the bed). . . .
8
                Id.
9

10 Plaintiff then describes an incident in December 2015 when his cellmate at the time – Joseph

11 Cray – jumped down from the top bunk and injured Plaintiff's shoulder.  See id. at 12.

12             This claim is also foreclosed.  The Court is persuaded by the authority in support

13 of this conclusion cited in Defendants' brief.  See Bridgewater v. Cate, 2013 WL 4051626, at *2-

14 3 (E.D. Cal. Aug. 9, 2013), report and recommendation adopted, 2013 WL 6564278, at *1 (E.D.

15 Cal. Dec. 13, 2013); Millsap v. Cate, 2012 WL 1037949, at *4 (E.D. Cal. Mar. 27, 2012)

16 ("multiple district courts in the Ninth Circuit have held that the failure of prison officials to equip

17 prison cells with a ladder or some other safety apparatus to assist inmates in ascending to and

18 descending from bunk beds does not amount to the deprivation of a minimally civilized measure

19 of life's necessities") (citations and quotation marks omitted); Hiscox v. Martel, 2011 WL

20 5241277, at *2-3 (E.D. Cal. Nov. 1, 2011) ("prison officials' failure to provide a ladder or other

21 safety features may not reasonably be characterized as a deliberate deprivation of a human need

22 or as a condition that placed plaintiff's health or welfare in imminent danger").

23

c.      Single Desk

24             Plaintiff claims that his Eighth Amendment rights were violated by the lack of two

25 desks in his shared cell.  See ECF No. 20, pg. 13.  According to Plaintiff:

26                    There is only one desk in the cell that only one could eat their meal
                on at a time.  The one desk also only allowed one inmate to write on. . . .
27
                Id.
28

9

1       Plaintiff's claim that he suffers cruel and unusual conditions of confinement in

2   violation of the Eighth Amendment because he and his cellmate must share a single desk is

3   frivolous.  As discussed above, claims based on sharing a cell with a cellmate are generally

4   foreclosed as a matter of law.  Objectively, sharing a desk with a cellmate does not constitute a

5   sufficiently serious deprivation of Plaintiff's Eighth Amendment rights.  See Farmer, 511 U.S. at

6   834.  The Court agrees with Defendants that they are entitled to judgment as a matter of law on

7   Plaintiff's claim relating to a single desk in a shared cell.

8                        d.        Sanitation

9       Plaintiff alleges that his shared cell was unsanitary.  See ECF No. 20, pg. 13.

10  Plaintiff claims:

11          Level Four Prisoners are required to eat their breakfast, lunch, and
            dinner in cells.  Often Plaintiff would have to each his meals while his
12          cellmate urinated/defecated and/or in a filthy cell near a filthy toilet and
            Salmonella or other disease exposure (*Duck/geese dropping tracked in
13          cells).

14          Id.

15      As to the objective element, "subjection of a prisoner to lack of sanitation that is

16  severe or prolonged can constitute an infliction of pain within the meaning of the Eighth

17  Amendment." Anderson v. Cty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); see also Johnson v.

18  Lewis, 217 F.3d 726, 731-32 (9th Cir. 2000); Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir.

19  1985).  In this case, the Court finds for the reasons discussed below that Plaintiff cannot establish

20  this element.

21      Defendants argue:

22          Here, Wilkins's claim that his cellmate often chose to use the toilet
            while he was eating is not sufficiently serious to satisfy the objective
23          requirement of an Eighth Amendment claim. While the absence of an in-
            cell toilet may well offend the Eighth Amendment, Wilkins's discomfort
24          by his cellmate's use of an otherwise functioning in-cell toilet while he ate
            is, at the most, a restrictive and harsh condition of confinement that does
25          not offend the Constitution. Farmer, 511 U.S. at 834. And Wilkins's
            testimony that the toilet could only be flushed twice during a period of
26          time "so if [his cellmate] pushed that thing twice, the defecation is going
            to stay in the toilet and the smell while I'm trying to eat my meal" does
27          not transform an arguably harsh condition into one that violates the
            Constitution because this unflushed condition cannot be said to be either
28          long-term or severely unsanitary, nor did Wilkins describe it as anything

                                        10

1

> other than a potential occurrence. (DSUF ¶ 7.) Even taken as true, such a
> condition did not deprive Wilkins of the minimal civilized measure of
> life's necessities, and, accordingly summary judgment is warranted.

2

3      ECF No. 68-1, pg. 18.

4      Like the conditions-of-confinement claims discussed above, Plaintiff's sanitation

5   claim reflects the typical harshness and discomfort of prison life involving the legitimate

6   penological necessity of shared cells.  As Plaintiff's deposition testimony reveals, the sanitation

7   claim is limited to his cellmate's use of the shared in-cell toilet and, arguably, duck/goose

8   dropping tracked into the cell.[3]  Plaintiff has not claimed that either condition was severe or

9   prolonged.  The Court is thus satisfied that Defendants have met their initial burden on summary

10  judgment of establishing the non-existence of a material fact relating to Plaintiff's Eighth

11  Amendment sanitation claim.

12      The burden shifts to Plaintiff to provide the Court with evidence of a sanitation

13  issue that was either severe or prolonged.  The Court finds that Plaintiff has failed to do so.  To

14  the contrary, Plaintiff testified at his deposition that the toilet could be flushed twice daily.  There

15  is no evidence that the toilet was clogged or could not be flushed for any extended duration of

16  time.  Nor has Plaintiff offered evidence that he ever complained of overflowing of the toilet.  As

17  to animal dropping, Plaintiff's deposition testimony shows that he was provided warnings

18  regarding droppings and told to wash his hands often. While the conditions Plaintiff describes

19  may be considered unpleasant, they are not serious enough, either in severity or duration, to

20  offend the Eighth Amendment.

21      Defendants are entitled to judgment as a matter of law on Plaintiff's sanitation

22  claim.

23  / / /

24  / / /

25  / / /

26  _____

27      [3]      Regarding animal droppings, Plaintiff testified: "they gave us all these warnings
    about how that brought salmonella and the different things and how to wash hands and do this

28  kind of stuff."  See ECF No. 68-4 (transcript of Plaintiff's deposition attached as Exhibit A to the
    declaration of defense counsel in support of Defendants' motion for summary judgment).

11

1

           e.      <u>Fear of Harm</u>

2

        Plaintiff alleges in the second amended complaint that the fear of harm from

3

cellmates violates the Eighth Amendment.  <u>See</u> ECF No. 20, pgs. 12-13.  Plaintiff claims:

4

             Level 4 Prisoners are the highest custody level and in most

5

        instances the most violent criminals in CDCR.  As evidence shows, double
celling allows extreme violence, injuries, deaths, rapes and many other
incidents.  There are long periods (2 hrs. or more) in which no CDCR

6

        officials come around nor do welfare checks of prisoners. . . .

7

        <u>Id.</u>

8

        Under Eighth Amendment principles outlined above, prison officials have a duty

9

to take reasonable steps to protect inmates from physical abuse.  <u>See</u> <u>Hoptowit v. Ray</u>, 682 F.2d

10

1237, 1250-51 (9th Cir. 1982); <u>Farmer</u>, 511 U.S. at 833.  Liability exists only when two

11

requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a

12

substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the

13

risk.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837.

14

        In the safety context, deliberate indifference requires a showing of "more than a

15

mere suspicion that an attack will occur." <u>Berg v. Klincheloe</u>, 794 F.2d 457, 459 (9th Cir. 1987).

16

"[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a

17

sufficiently substantial risk of serious harm to his future health." <u>Williams v. Wood</u>, 223 F. App'x

18

670, 671 (9th Cir. 2007) (citing <u>Farmer</u>, 511 U.S. at 843), <u>cert. denied</u>, 552 U.S. 849 (2007);

19

<u>Jackson v. Paramo</u>, 2018 WL 571957, at *8 (S.D. Cal. 2018), <u>report and recommendation</u>

20

<u>adopted</u>, 2018 WL 1531927 (S.D. Cal. 2018).  "[T]hreats between inmates are common and do

21

not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."

22

<u>Prater v. Dahm</u>, 89 F.3d 538, 541 (8th Cir. 1996); <u>see also</u> <u>Perkins v. Grimes</u>, 161 F.3d 1127,

23

1130 (8th Cir. 1998) (no notice of the risk that an inmate would sexually assault another where

24

they had previously been housed together without incident).

25

        As to both the objective and subjective prongs, Defendants argue:

26

             Here, Wilkins testified that his cellmate committed no acts of

27

        violence against him and does not recall if his cellmate ever threatened
him. (DSUF ¶ 12.) Instead, Wilkins testified at length regarding his
generalized fear of "the potential for violence" based on his cellmate's

28

security level and perceived mental health issues, and the lack of "officers walking by continuously." (*Id.* ¶ 13). . . .

ECF No. 68-1, pg. 19.

Defendants' argument is persuasive.  Specifically, as Defendants' note, the allegations and deposition testimony show no more than a generalized fear of a potential for harm, which is insufficient.  *See* Berg, 794 F.2d at 459.  Plaintiff has not produced any evidence suggesting that any defendant knew of a particularized threat of harm.  In fact, Plaintiff testified at his deposition that he feared "the potential for violence," as opposed to a real threat based on some specific circumstance or set of circumstances about which prison officials were aware.

To accept Plaintiff's theory would allow for the absurd conclusion that every prison setting – which necessarily carries the potential for violence given the nature of the population and the environment in which they live – violates the Eighth Amendment.  By imposing a "substantial risk" requirement to the objective prong, the Supreme Court has rejected this outcome.  *See* Farmer, 511 U.S. at 837; *see also* Berg, 794 F.2d at 459.

Finally, there exists in this case an absence of proof on the subjective prong – whether the defendants disregarded a safety risk wantonly and to cause Plaintiff pain and suffering.  Again, the potential for harm about which Plaintiff complains is inherent in the prison setting and not the result of a malicious subjective intent on the part of prison officials.  Absent something more – which Plaintiff does not offer – Defendants cannot be liable for the inherent dangers of prison life which can be uncomfortable, restrictive, and harsh.  *See* Farmer, 511 U.S. at 832; Rhodes, 452 U.S. at 347, 349); Hallett, 296 F.3d at 745; Hoptowit, 682 F.2d at 1246; Morgan, 465 F.3d at 1045; Osolinski, 92 F.3d at 937; Jordan, 986 F.2d at 1531.

The Court finds that Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim based on fear of harm.

/ / /

/ / /

/ / /

/ / /

13

1          2.       Access to Jewish Religious Services (Claims II and III)

2          In Claim II, Plaintiff alleges that he was denied access to Jewish religious services

3 by Defendant David because Plaintiff is an EOP inmate, in violation of his equal protection rights

4 under the Fourteenth Amendment.  In Claim III, Plaintiff alleges more generally that he was

5 denied access to Jewish religious services, in violation of his free exercise rights under the First

6 Amendment.  These claims are related to the extent they involve the denial of religious services.

7 As to Claim III, Defendants contends that Plaintiff was not denied religious services by any of the

8 defendants named in that claim – David, Stewart, Macomber, and Giannelli.  In Claim II,

9 Defendants argue that, even if Plaintiff was denied access to Jewish religious services during the

10 time period alleged by Plaintiff, Defendant David did not harbor an intent to discriminate against

11 Plaintiff based on Plaintiff's status as an EOP inmate.

12          Given the interrelated nature of Claims II and III, the Court finds it useful to

13 assemble a timeline of events related to Plaintiff's access to Jewish religious services.  According

14 to the second amended complaint, Plaintiff was denied access to Jewish religious services

15 between April 2014 when he arrived at CSP-Sac and January 2016 when his inmate grievance

16 regarding access to religious services was granted.  See ECF No. 20, pgs. 16-17.

17          Considered here are Plaintiff's second amended complaint and attached exhibits,

18 Defendants' motion for summary judgment and attached exhibits, Plaintiff's opposition

19 declaration and attached exhibits, Plaintiff's sur-reply and attached exhibits, and Defendants'

20 response to Plaintiff's sur-reply and attached exhibits.

21          Defendants do not dispute many of the allegations in Plaintiff's second amended

22 complaint and, in fact, rely on them in presenting their statement of undisputed facts in this case.

23 See generally ECF No. 68.  For this reason, the Court includes in the timeline those events

24 indicated by exhibits attached to Plaintiff's second amended complaint, as well as various

25 undisputed underlying factual allegations contained therein.  The Court also considers the docket

26 in this case.

27 / / /

28 / / /

1        Many of the exhibits attached to Plaintiff's second amended complaint, and cited

2   here, are duplicative of exhibits provided with Plaintiff's declaration in opposition to the pending

3   motion for summary judgment.  Where exhibits are duplicative, the Court refences those attached

4   to the second amended complaint.  Similarly, Exhibit A attached to Defendants' response to

5   Plaintiff's sur-reply contains duplicative documents.

6        The evidence submitted by the parties reveals the following series of events:

7   April 2014         Plaintiff arrives at CSP-Sac.  See ECF No. 20, pg. 16
                       (second amended complaint).
8

9   July 1, 2014       Form 22 request for Jewish religious services submitted
                       by Plaintiff.  See ECF No. 20, pgs. 59-62 (Exhibit H to
10                     second amended complaint); see also ECF No. 85-2
                       (Exhibit A to defense  counsel's declaration in support of
11                     Defendants' response to Plaintiff's sur-reply).

12  January 13, 2015   Form 22 request for Jewish religious services submitted
                       by Plaintiff.  See ECF No. 85-2 (Exhibit A to defense
13                     counsel's declaration in support of Defendants' response
                       to Plaintiff's sur-reply).

14  May 10, 2015       Form "CDCR 3030" submitted by Plaintiff advising of
                       Kosher religious dietary specifications.  See ECF No.
15                     85-2 (Exhibit A to defense counsel's declaration in
                       support of Defendants' response to Plaintiff's sur-reply).
16

17  May 15, 2015       Religious diet agreement signed by Plaintiff.  See ECF
                       No. 85-2 (Exhibit A to defense counsel's declaration in
18                     support of Defendants' response to Plaintiff's sur-
                       reply).

19  May 27, 2015       Form 22 request for Jewish religious services submitted
                       by Plaintiff.  See ECF No. 20, pgs. 59-62 (Exhibit H to
20                     second amended complaint); see also ECF No. 85-2
                       (Exhibit A to defense counsel's declaration in support
21                     of Defendants' response to Plaintiff's sur-reply).

22  May 27, 2015       Form "CDCR 3030" submitted by Plaintiff advising of
                       Kosher religious dietary specifications.  See ECF No.
23                     85-2 (Exhibit A to defense counsel's declaration in
                       support of Defendants' response to Plaintiff's sur-reply).
24

25  May 27, 2015       Form 22 request for Religious services submitted by
                       Plaintiff.  See ECF No. 85-2 (Exhibit A to defense
26                     counsel's declaration in support of Defendants' response
                       to Plaintiff's sur-reply).

27  / / /

28  / / /

15

| | | |
|---|---|---|
| 1 | May 27, 2015 | Religious diet agreement signed by Plaintiff.  See ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| 4 | June 4, 2015 | Form 22 request for Jewish religious servicers submitted by Plaintiff.  On this form, Plaintiff states that he has not received Jewish services or a Kosher diet for over a year.  See ECF No. 77, pgs. 40-58 (Exhibit G to Plaintiff's declaration in opposition to Defendants' motion for summary judgment); see also ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| 8 | July 12, 2015 | Form 22 request for Religious services submitted by Plaintiff.  See ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| 11 | July 14, 2015 | Inmate grievance submitted by Plaintiff regarding lack of access to Jewish services since May 2014.  Matter is assigned no. SAC-B-15-02075.  According to Plaintiff, he submitted a Form 22 request for services on July 12, 2015.  Annotations on the form indicate "withdrawn."  See ECF No. 20, pgs. 59-62 (Exhibit H to second amended complaint). |
| 14 | July 26, 2015 | Form 22 request for Religious services submitted by Plaintiff.  See ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| 17 | August 5, 2015 | Form "CDCR 3030" submitted by Plaintiff advising of Kosher religious dietary specifications.  See ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| 20 | August 5, 2015 | Defendant David spoke with Plaintiff regarding his request for religious services, David informed Plaintiff that he would be listed for attendance at Jewish services on August 7, 2015.  See ECF No. 20, pgs. 48-57 (Exhibit G to second amended complaint); see also ECF No. 68-2, pg. 4 (Defendants' statement of undisputed facts citing Exhibit G to the second amended complaint). |
| 23 | August 7, 2015 | Scheduled Jewish services cancelled because prison was on modified program status.  Plaintiff submitted a Form 22 request for services on August 9, 2015, regarding the lack of Jewish services on two days earlier on August 7.  See ECF No. 20, pgs. 48-57 (Exhibit G to second amended complaint); see also ECF No. 68-2, pg. 4 (Defendants' statement of undisputed facts citing Exhibit G to the second amended complaint). |

/ / /

16

| | | |
|---|---|---|
| August 9, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| August 18, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| August 22, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| August 25, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| August 27, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| September 2015 | Plaintiff placed on list for approval for Kosher meals. <u>See</u> ECF No. 20, pgs. 48-57 (Exhibit G to second amended complaint); <u>see also</u> ECF No. 68-2, pg. 4 (Defendants' statement of undisputed facts citing Exhibit G to the second amended complaint). |
| September 2, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| September 8, 2015 | Inmate grievance submitted by Plaintiff regarding lack of access to Jewish religious services since April 2014. Matter is assigned no. SAC-B-15-02776. Plaintiff states that he submitted eight Form 22 requests since July 2014 regarding access to religious services. <u>See</u> ECF No. 20, pgs. 48-57 (Exhibit G to second amended complaint). |
| September 16, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| September 23, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |

///

17

| | | |
|---|---|---|
| 1 | September 30, 2015 | Informational chrono by Defendant David documenting interview with Plaintiff regarding grievance no. SAC-B-15-02776. Defendant David stated that Plaintiff was offensive and threatened litigation. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | October 7, 2015 | Informational chrono authored by Defendant David indicating that Plaintiff is not authorized for B-Yard Jewish services due to being threatening and verbally aggressive). <u>See</u> ECF No. 85-3 (Exhibit B to Defendants' response to Plaintiff's sur-reply). |
| 6 | | |
| 7 | | |
| 8 | October 7, 2015 | Memorandum to Plaintiff from Appeals Analysis B. Holmes regarding delay in processing of grievance no. SAC-B-15-02776 due to unavailability of witnesses. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| 9 | | |
| 10 | | |
| 11 | October 13, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| 12 | | |
| 13 | | |
| 14 | October 14, 2014 | Missing response by Defendant David to Plaintiff's Form 22 request for Jewish religious services. According to Plaintiff, Defendant David's response indicated that Plaintiff was not eligible for Jewish services due to "safety concerns." <u>See</u> ECF No. 80, pg. 3 (Plaintiff's sur-reply). According to Defendants, this document could not be found in Plaintiff's prison file despite an exhaustive search. <u>See</u> ECF No. 85 (Defendants' response to Plaintiff's sur-reply). Defendants, however, assume the document is as represented by Plaintiff. <u>See id.</u> |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | October 28, 2015 | First-level response to inmate grievance no. SAC-B-15-02776. Grievance partially granted. <u>See</u> ECF No. 85-2 (Exhibit A to declaration of defense counsel in support of Defendants' response to Plaintiff's sur-reply). |
| 20 | | |
| 21 | | |
| 22 | November 15, 2015 | Form 22 request for Religious services submitted by Plaintiff. <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| 23 | | |
| 24 | November 22, 2015 | Form 22 request for Jewish religious services submitted by Plaintiff. <u>See</u> ECF No. 20, pgs. 64-70. (Exhibit I to second amended complaint). |
| 25 | | |
| 26 | /// | |
| 27 | /// | |
| 28 | /// | |

18

| | | |
|---|---|---|
| 1 | November 23, 2015 | Response by Defendant David to Plaintiff's Form 22 request for services indicating the availability of cell-side religious services upon request.  See ECF No. 20, pg. 72 (Exhibit I to second amended complaint); see also ECF No. 68-2, pg. 4 (Defendants' statement of undisputed facts citing Exhibit 6 to Plaintiff's deposition), and ECF No. 68-4 (transcript of Plaintiff's deposition attached as Exhibit A to Defendants' motion for summary judgment). |
| 6 | November 23, 2015 | Response by Defendant David to inmate Morris's Form 22 request for services indicating that Jewish services were being held in B-Yard. Plaintiff further testified that, despite his authorization for cell-side services and Morris's authorization for services in B-Yard, neither obtained services.  See ECF No. 20, pg. 74 (Exhibit K to second amended complaint); see also ECF Nos. 68-2, pg. 6 (Defendants' statement of undisputed facts citing Plaintiff's deposition), and ECF No. 68-4 (transcript of Plaintiff's deposition attached as Exhibit A to Defendants' motion for summary judgment). |
| 12 | January 11, 2016 | Plaintiff's inmate grievance no. SAC-B-15-02776 partially granted at the second level by Defendant Macomber.  Plaintiff's request for access to Jewish services granted; Plaintiff's request for monetary compensation denied.  See ECF No. 20, pgs. 48-57 (Exhibit G to second amended complaint); see also ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants response to Plaintiff's sur-reply). |
| 16 | January 22-24, 2016 | Plaintiff attended Buddhist religious services.  See ECF No. 68-2, pg. 6 (Defendants' statement of undisputed facts citing Plaintiff's deposition), and ECF No. 68-4 (transcript of Plaintiff's deposition attached as Exhibit A to Defendants' motion for summary judgment). |
| 19 | February 8, 2016 | Defendant David responds to a Form 22 submitted by Plaintiff indicating that Plaintiff was on the "ducat list" to attend Jewish services.  See ECF No. 20, pgs. 64-70. (Exhibit I to second amended complaint); see also ECF No. 68-2, pg. 5 (Defendants' statement of undisputed facts citing Exhibit I to the second amended complaint). |
| 23 | February 10, 2016 | Form 22 for religious request submitted by Plaintiff indicating that, despite being on the "ducat list," "other officers" were not aware that EOP inmates were allowed to attend religious services.  See ECF No. 20, pgs. 64-70. (Exhibit I to second amended complaint); see also ECF No. 68-2, pg. 5 (Defendants' statement of undisputed facts citing Exhibit I to the second amended complaint). |

/ / /

/ / /

19

| | | |
|---|---|---|
| February 11, 2016 | | Form 22 request for religious services submitted by Plaintiff indicating that access to religious services was being denied (by unspecified officers).  Plaintiff states that, despite his grievance being granted in January 2016, he still had no access to Jewish services.  <u>See</u> ECF No. 77, pgs. 36-39 (Exhibit F to Plaintiff's declaration in opposition to Defendants' motion for summary judgment). |
| March 2, 2016 | | Form 22 request for religious services submitted by Plaintiff indicating that he has not been provided Jewish religious services and that "they" were not told that EOP inmates could attend Jewish services.  <u>See</u> ECF No. 77, pgs. 36-39 (Exhibit F to Plaintiff's declaration in opposition to Defendants' motion for summary judgment). |
| March 7, 2016 | | Original complaint filed.  <u>See</u> ECF No. 1. |
| March 29, 2016 | | Third-level appeal response issued as to grievance no. SACB-15-02776.  Plaintiff's grievance denied.  Decision indicated that, while Plaintiff was entitled to access to Jewish services, access was properly denied due to Plaintiff's behavior towards David.  <u>See</u> ECF No. 85-2 (Exhibit A to defense counsel's declaration in support of Defendants' response to Plaintiff's sur-reply). |
| April 6, 2016 | | Plaintiff participated in Jewish religious services.  <u>See</u> ECF No. 20, pg. 76 (Exhibit L to second amended complaint). |
| April 11, 2016 | | Response by Defendant David to Plaintiff's Form 22 request for services.  The response indicates that Plaintiff participated in Jewish services on April 6, 2016.  The response also indicates that regular access to Jewish services was hindered by "cross scheduling" issues.  <u>See</u> ECF No. 20, pg. 76 (Exhibit L to second amended complaint); <u>see also</u> ECF No. 77, pgs. 60-61 (Exhibit H to Plaintiff's declaration in opposition to Defendants' motion for summary judgment). |
| April 19, 2016 | | Form 22 request for services submitted by Plaintiff regarding not being called to Jewish services on April 13, 2016.  <u>See</u> ECF No. 20, pgs. 78-79 (Exhibit M to second amended complaint). |
| April 28, 2016 | | Form 22 request for services submitted by Plaintiff regarding not being called to Jewish services that same day.  <u>See</u> ECF No. 20, pgs. 78-79 (Exhibit M to second amended complaint). |
| May/June 2016 | | Plaintiff regularly attended Jewish services.  <u>See</u> ECF No. 68-2, pg. 6 (citing Plaintiff's deposition; <u>see also</u> ECF No. 68-4 (transcript of Plaintiff's deposition attached as Exhibit A to Defendants' motion for summary judgment). |

20

| | |
|---|---|
| June 14, 2016 | Plaintiff files notice of change of address to the R.J. Donovan Correctional Facility.  See ECF No. 10. |
| May 10, 2018 | First amended complaint filed.  See ECF No. 16. |
| December 18, 2018 | Plaintiff files notice of change of address to the California Health Care Facility, where he is currently housed.  See ECF No. 18. |
| February 4, 2019 | Second amended complaint filed.  See ECF No. 20. |

The Court evaluates Defendants' motion for summary judgment on Claim II (equal protection violation as against Defendant David) and III (free exercise violation as against Defendants David, Stewart, Macomber, and Giannelli) in light of the foregoing timeline.[4]  The Court will first address the more general issue raised in Claim III – whether Plaintiff was denied access to Jewish religious in violation of his free exercise rights.  The Court will then assess the evidence related to Defendants' argument for Claim II – that Defendant David lacked discriminatory intent necessary to be liable for violation of Plaintiff's equal protection rights.

a. <u>Free Exercise of Religion</u>

In Claim III, Plaintiff contends that he was denied access to Jewish religious services between April 2014 and January 2016.  See ECF No. 20, pgs. 16-17.  Plaintiff brings his claim under the First Amendment as well as the Religious Land Use and Institutionalized Persons Act.  See id. at 16.  Plaintiff alleges:

> Plaintiff arrived at CSP SAC in April 2014 and began seeking to attend Religious Services (Jewish) to practice Judaism.  All of Plaintiff's requests were initially ignored (Exhibit H).
> On 5-27-15 Plaintiff sent a 5th request for Jewish services to the Chaplain.  Chaplain Orel David on 6/1/15 responded but did not address Jewish Services (Exhibit H).
> On 7-14-15 Plaintiff submitted a 602 Appeal [inmate grievance] on the denial (Exhibit H).
> On 8-5-15 Chaplain David informed Plaintiff if he withdrew his appeal, he would approve Kosher Diet and begin Jewish services on 8/7/15.
> Jewish services did not begin on 8/7/15.

---

[4] The Court acknowledges that the timeframe alleged in the complaint ends in January 2016, which is when Plaintiff's grievance related to religious services was first granted.  Even so, the Court notes events after this date as supported by the parties' evidence.  To the extent Plaintiff's claim encompasses events occurring after January 2016, any violations as to the named defendants necessarily ended in June 2016 when Plaintiff was transferred out of CSP-Sac.

1            Plaintiff submitted a new 602 Appeal on 9-3-2015 (Exhibit G).

2            On 10/7/15 Chaplain David notified Plaintiff he was conducting services on B Yard every other Wednesday. [5]

3            Plaintiff was not taken to any Jewish services. Plaintiff began requesting "Any Form" of services (Cell Side, literature, etc.) but it was never provided (Exhibit I).

4            Plaintiff requested a response from Chaplain David dated. . .

5   10/14/15 stating he was not eligible for Jewish services. On 11/25/15 Chaplain David wrote Plaintiff that cell side services were available (Exhibit J). On the same date (11/23/15) he wrote (White) inmate Morris

6   (F10414) that he was adding him to the Wednesday Jewish service list (Exhibit K) (Morris never taken).

7            On 1/11/16 Warden Macomber granted Plaintiff access to Jewish services (Exhibit G). Plaintiff was never taken to services until 4/6/16 and

8   4/20/16 (Exhibit L).

           Plaintiff was then denied access to Jewish services until he

9   transferred on 6/26/16 (Exhibit M).

10       Id. at 16-17.

11            The United States Supreme Court has held that prisoners retain their First

12 Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of

13 Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus,

14 for example, prisoners have a right to be provided with food sufficient to sustain them in good

15 health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d

16 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities

17 where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428

18 F.2d 1, 4 (3rd Cir. 1970). Officials are not, however, required to supply clergy at state expense.

19 See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to

20 that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto,

21 405 U.S. 319, 322 (1972).

22            However, the court has also recognized that limitations on a prisoner's free

23 exercise rights arise from both the fact of incarceration and valid penological objectives. See

24 McElyea, 833 F.2d at 197. For instance, under the First Amendment, the penological interest in a

25 simplified food service has been held sufficient to allow a prison to provide orthodox Jewish

26

27          [5]      This references the informational chrono issued by Defendant David Defendants contend provides context for the missing October 14, 2015, response by Defendant David

28 discussed in Plaintiff's sur-reply. See ECF Nos. 85 and 85-3 (Exhibit B to declaration of defense counsel in support of response to Plaintiff's sur-reply).

1   inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d 873,

2   877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting

3   inmates to their work and educational assignments.  See Mayweathers v. Newland, 258 F.3d 930,

4   38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

5           While free exercise of religion claims originally arose under the First Amendment,

6   Congress has enacted various statutes in an effort to provide prisoners with heightened religious

7   protection.  See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  Prior to these

8   congressional efforts, prison free exercise claims were analyzed under the "reasonableness test"

9   set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349.  The

10  first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA)

11  of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test."

12  See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d

13  732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of

14  Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free

15  exercise challenges brought by prison inmates).

16          Congress then enacted the Religious Land Use and Institutionalized Persons Act

17  (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of

18  Boerne."  Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir.

19  2006).  Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on

20  religious exercise unless there exists a compelling governmental interest and the burden is the

21  least restrictive means of satisfying that interest.  See id. at 986.  RLUIPA has been upheld by the

22  Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible

23  with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates

24  exceptional government-created burdens on private religious exercise.'"  Warsoldier, 418 F.3d at

25  994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)).  Congress achieved this goal by

26  replacing the "reasonableness test" articulated in Turner with the "compelling government

27  interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

28  / / /

1    It is not clear whether a prisoner must specifically raise RLUIPA in order to have

2 his claim analyzed under the statute's heightened standard.  In <u>Alvarez v. Hill</u>, the Ninth Circuit

3 held that, if a complaint contains "factual allegations establishing a 'plausible" entitlement to

4 relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8

5 of the Federal Rules of Civil Procedure."  518 F.3d 1152, 1157 (9th Cir. 2008); <u>but see</u>

6 <u>Henderson v. Terhune</u>, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion

7 about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the

8 First Amendment only).  Therefore, it is possible for a prisoner's complaint to raise both a First

9 Amendment claim and RLUIPA claim based on the same factual allegations.  In other words,

10 even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may

11 nonetheless be entitled to them.  Under <u>Henderson</u>, however, the plaintiff's claim may be limited

12 to the less stringent <u>Turner</u> "reasonableness test" if the plaintiff specifically brings the claim

13 under the First Amendment only.

14    Under both the First Amendment and RLUIPA, the prisoner bears the initial

15 burden of establishing that the defendants substantially burdened the practice of his religion by

16 preventing him from engaging in conduct mandated by his faith.  <u>See</u> <u>Freeman v. Arpaio</u>,125 F.3d

17 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); <u>see also</u> <u>Warsoldier</u>, 418 F.3d

18 at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a

19 "substantial burden," pre-RLUIPA cases are instructive.  <u>See id.</u> at 995 (discussing cases defining

20 "substantial burden" in the First Amendment context).  To show a substantial burden on the

21 practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the

22 adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by

23 the religion or by preventing him or her from engaging in conduct or having a religious

24 experience which the faith mandates."  <u>Graham v. Commissioner</u>, 822 F.2d 844, 850-51 (9th Cir.

25 1987).  The burden must be more than a mere inconvenience.  <u>See id.</u> at 851.  In the context of

26 claims based on religious diets, a plaintiff must prove that prison officials refused to provide a

27 diet which satisfies his religious dietary laws or that the available prison menu prevented him

28 from adhering to the religious dietary laws mandated by his faith.  <u>See</u> <u>Bryant v. Gomez</u>, 46 F.3d

24

948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest.  See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89).  In applying this test, the court must weight four factors:  (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction.  See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'"  Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95.  Prison security is an example of a compelling governmental interest.  See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13).  In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice.  See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

In their motion for summary judgment, Defendants argue that Plaintiff cannot establish that any of the defendants against whom the claim proceeds – David, Gianelli, Macomber, and Stewart – are responsible for the denial of religious services.  See ECF No. 68-1, pg. 25.  In summary, as to each individual defendant against whom Claim III proceeds,

/ / /

/ / /

/ / /

1    Defendants contend:

2          David            Relying on evidence forming the timeline of events outlined
                            above, Defendants contend that Defendant David facilitated
3                           Plaintiff's access to religious services. Defendants specifically
                            note Plaintiff's grievance no. SAC-B-15-02776 complaining of
4                           lack of access to Jewish religious services, which Defendant
                            David granted at the first level.  See id.
5

6          Gianelli         As with Defendant David, Defendants contend the evidence
                            shows that "Gianelli was assigned as the second level reviewer
7                           of [Plaintiff's grievance no.] SAC-B-15-02776 and she too
                            approved Wilkins's request," stating: "Your request to
8                           participate, be offered/accommodated for Jewish service, has
                            been granted." Id.

9          Macomber        According to Defendants, Macomber also facilitated
                            Plaintiff's access to Jewish religious services by approving
10                          Gianelli's second-level decision to grant Plaintiff grievance
                            no. SAC-B-15-02776.  See id.
11

12         Stewart         Defendants essentially contend that Defendant's Stewart's
                            involvement was communication with Plaintiff regarding
13                          religious services, but that Stewart did not personally deny
                            access.  See id.

14         The Court notes that the gravamen of Defendants' arguments is twofold.  First,

15   Defendants maintain that the individual defendants did not hinder but, in fact, facilitated

16   Plaintiff's access to Jewish religious services.  Second, Defendants appear to concede that

17   Plaintiff's access to Jewish religious services was hindered for some amount of time after

18   Plaintiff's arrival at CSP-Sac in April 2014.  Defendants, however, point to the empty chair and

19   assert that some other unnamed officers are responsible.

20         The undisputed evidence, reflected in the timeline set forth above, shows this to be

21   the case.  When Plaintiff was denied access to religious services, it was done by unnamed "other

22   officers."  The evidence further shows that these "other officers" did so under the belief that EOP

23   inmates like Plaintiff were, for reasons undisclosed by the record, not allowed to attend services.

24   The evidence does not show that services were denied by Defendants David, Gianelli, Macomber,

25   or Stewart.  To the contrary, and as Defendants contend, the evidence shows that these defendants

26   granted Plaintiff's inmate grievance (no. SAC-B-15-02776) at each step of the administrative

27   review process.  As to Gianelli, Macomber, and Stewart, this was their only involvement in

28   Plaintiff's issues with access to Jewish religious services.  As to David, the timeline reflects

26

1   numerous occasions on which he attempted to facilitate Plaintiff's access to religious services

2   when not at odds with institutional goals or Plaintiff's own schedule.

3           Ultimately, the evidence offered by both parties, and as to which no objections

4   have been made, establishes that Defendants David, Gianelli, Macomber, and Stewart facilitated

5   Plaintiff's access to Jewish religious services consistent with Plaintiff's free exercise rights under

6   both the First Amendment and RLUIPA.  The combined and undisputed evidence also shows that

7   any barriers to access were caused by unnamed officers.  Plaintiff has not proffered evidence

8   creating a genuine dispute as to the involvement of Defendants David, Gianelli, Macomber, or

9   Stewart in denial of access to Jewish religious services.  The Court finds that these defendants are

10   entitled to judgment as a matter of law on Plaintiff's free exercise claim.

11               b.      Equal Protection

12           In the remaining portion of Claim II, Plaintiff alleges that Defendant David

13   violated his equal protection rights by denying him access to Jewish religious services because

14   Plaintiff is an EOP [Enhanced Outpatient Program] inmate.  See ECF No. 20, pgs. 14-15.

15   According to Plaintiff:

16           From May 2015 to April 2016,[6] Plaintiff was denied access to
            Jewish Judaism services solely because he was an EOP Mental Health
17           Prisoner.
                    Mainline/General Population inmates were allowed to attend the
18           services, but EOP Mental Health prisoners were denied.  Plaintiff wrote an
            appeal that was granted by Warden Jeff Macomber on 1/11/16 that he
19           would have access to Jewish services (Exhibit G).
                    However, Plaintiff (Mental Health Prisoners) were still denied
20           until April 6, 2016.  Plaintiff was allowed twice but then not allowed
            again.
21
            Id. at 15.
22

23           Equal protection claims arise when a charge is made that similarly situated

24   individuals are treated differently without a rational relationship to a legitimate state purpose.  See

25   San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  Prisoners are protected from

26   invidious discrimination based on race.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

27           [6]      This timeframe for Plaintiff's equal protection claim against Defendant David
varies from the April 2014 through January 2016 dates alleged with respect to Claim III for
28   violation of Plaintiff's free exercise rights under the First Amendment.

1  Racial segregation is unconstitutional within prisons save for the necessities of prison security

2  and discipline.  See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam).  Prisoners are also

3  protected from intentional discrimination on the basis of their religion.  See Freeman v. Arpaio,

4  125 F.3d 732, 737 (9th Cir. 1997).

5         Equal protection claims are not necessarily limited to racial and religious

6  discrimination.  See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying

7  minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not

8  constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying

9  minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of

10  race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069 (9th Cir. 2020)

11  (applying intermediate scrutiny to claim of discrimination on the basis of gender).

12         In order to prevail on a § 1983 claim based on a violation of the Equal Protection

13  Clause of the Fourteenth Amendment, a plaintiff must establish that defendants acted with

14  intentional discrimination against plaintiff, or against a class of inmates which included plaintiff,

15  and that such conduct did not relate to a legitimate penological purpose.  See Village of

16  Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be

17  brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir.

18  2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v.

19  Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010

20  (9th Cir. 1985).

21         In their motion for summary judgment, Defendants argue that Plaintiff cannot

22  establish the subjective element.  See ECF No. 68-1, pgs. 21-24. (Section II of Defendants' brief).

23  In response to Plaintiff's sur-reply referencing a missing October 14, 2015, response from

24  Defendant David, Defendants withdrew various portions of their argument.  See ECF No. 85, pg.

25  15, n.3.[7]

---

26  [7]     From their moving points and authorities brief, Defendants withdraw Section II,
    pg. 22, lines 13-14 and 22-27, and pg. 23, lines 4-5.  See ECF No. 85, pg. 15.  From their reply
27  brief, Defendants withdraw Section II, pg. 7, lines 19-20; pg. 8, lines 1-10 and 17-18 ("or that it
    was, in fact, David who prohibited Wilkins's attendance").  See id.  Overall, Defendants
28  withdraw "those portions of Defendants' summary judgment motion and related filings that argue

1    Omitting the withdrawn portions of Defendants' brief, Defendants argue as

2    follows with respect to the subjective element of Plaintiff's equal protection claim against

3    Defendant David:

4    Here, other than conjecture and speculation, Wilkins lacks
     evidence to demonstrate that David acted with an intent to discriminate

5    against him by denying him access to services because he was an EOP
     inmate. In fact, the evidence illustrates David's lack of discriminatory

6    intent. In response to a grievance Wilkins filed concerning service
     attendance in July 2015, David, who only assumed the role as CSP Sac

7    Rabbi approximately three months earlier, spoke with Wilkins on August
     5, 2015, and advised him that he could attend services beginning on

8    August 7, 2015, and that he would approve Wilkins's request for kosher
     meals. (DSUF ¶ 19.) Within a month, David placed Wilkins on the kosher

9    meal plan. (*Id.*) And when Wilkins submitted a Form 22 inquiring why he
     was not taken to services on August 7th, David responded within three

10   days and explained that services did not proceed because the institution
     was placed on modified program. (*Id.*)

11   The first level response to a subsequent appeal Wilkins filed on
     September 8, 2015, noted that while services had not yet commenced, cell-

12   side services were implemented and that David met with Wilkins on
     several occasions and "in each instance you were impolite, harassing and

13   threating towards Rabbi David[;] Rabbi David found your behavior to be
     aggressive and unacceptable [and] advised you this behavior is in conflict

14   with the behavior of Judaism." (*Id.* ¶ 20.) On cross-examination, Wilkins
     denied that he was impolite, harassing, or threatening to David, but in the

15   same breath, concedes that he told David that he "was going to take legal
     action on the denied right of being able to practice" and that David took

16   the comment as a threat. (*Id.* ¶ 21.) In response, Wilkins claims that David
     threatened to discontinue Wilkins's kosher meals, but that he never did so.

17   (*Id.*) The second level response to that same appeal dated January 11,
     2016, indicated that Wilkins's claims that David ignored his attempts to

18   correspond were "false" and attached the Rabbi's Form 22 responses
     (omitted from Wilkins's exhibit). (*Id.* ¶ 22.) The response also indicated

19   that David placed Wilkins on the ducat list for the next two weeks to
     attend services and provided Wilkins with numerous reading materials.

20   (*Id.*)
     [Withdrawn portion omitted].  Wilkins testified that when he

21   received his appeal decision authorizing his attendance at services, he
     would write to "everybody," including David, who "would just respond

22   that I'm on the ducat list … and Officers Watkins and others continue to
     say we couldn't go." (*Id.* ¶ 23.) In a Form 22 dated February 10, 2016, to

23   David, Wilkins wrote, "I received your response dated 2/8/16 stating I'm
     on the [ducat] list," but that he was not called for services, nor were the

24   officers "aware that EOP can go to Jewish services." (*Id.* ¶ 24.) Form 22s
     dated March 2, 2016, from Wilkins to Macomber and Giannelli are

25   similar. (*Id.* ¶ 25.)

26   / / /

27   that Defendant David facilitated Wilkins' service attendance throughout this period, as well as
     those arguments that, if Wilkins was denied access to services, it was due to persons or

28   circumstances other than David."  Id.

[Withdrawn portion omitted]. After filing a grievance on the issue, Wilkins testified that the warden came and talked to him "and he said we could go, and then three days after [] the response, January 11th [2016], the EOP inmates could go." (*Id.*) Wilkins further testified, "when [services] did start, *they* wouldn't allow EOP inmates
to go, and after it was granted by the warden that we could go *they* still would not allow me to go." (*Id.*) (emphasis added.) [Withdrawn potion omitted].

And when asked if he knew why EOP inmates were allegedly not allowed to go to Jewish services, Wilkins testified, "Not officially, but it was stated that they couldn't go because of the danger for the white inmates with the general population inmates … that's what I was told. I don't know if that's factual or what, but that's what officers said out of their mouth … I would always ask can we please go, and … I remember [the officer] being the one that said [almost] as a jok[e], but seriously, that was the reason why." (*Id.* ¶ 27.)

The only arguable evidence that Wilkins proffered regarding David's alleged discriminatory intent to preclude Wilkins from services was an alleged Form 22 response from David to inmate Morris, an allegedly white inmate who received a different response from David than did Wilkins regarding service attendance—the response to Morris indicating services were held on B yard, and the response to Wilkins indicating that cell-side services were available. (*Id.* ¶ 28.) But Wilkins's theory that David denied him access to outside services, as opposed to cellside services, because he is not white, is not a cognizable claim in this case, and, even if true, which Defendants do not concede, is mooted by Wilkins's testimony that Morris, another EOP inmate, "was never allowed to go either" despite David's alleged authorization. (*Id.*) Thus, even if Wilkins's theory taken as true, the inescapable conclusion follows that it was not David who was preventing EOP inmates from attending services.

And despite Wilkins's bald assertion that David discriminated against him by not allowing him to attend services because he was an EOP inmate, the evidence demonstrates other reasons for Wilkins's lack of attendance, including his regular attendance at Buddhist services from January 22 through June 24, 2016, and Wilkins's own scheduling conflicts as detailed in an April 11, 2016, Form 22 response from David, "Thank you for your participation in the Jewish service on 4.6.2016. I hope all have been resolved with your cross scheduling and you will be able to participate on a regular basis when it's not conflicting with other programs and needs of the institution." (*Id.* ¶¶ 29-30.)

ECF No. 68-1, pgs. 21-24.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    In their response to Plaintiff's sur-reply, Defendants contend that their principal

2    argument remains valid despite withdrawal of portions of their moving points and authorities, as

3    outlined above, and assuming the missing October 14, 2015, response by David is as represented

4    by Plaintiff.  See ECF No. 85, pgs. 15-17.  According to Defendants:

5    Notwithstanding Defendants' requested withdrawal of the ancillary
     arguments above, the principle arguments supporting summary judgment
6    in favor of Defendant David on Plaintiff's First and Fourteenth
     Amendment claims against him are, in fact, bolstered by the newly
7    discovered evidence. While it is true that Defendant David's October 14,
     2015, Form 22 response indicated that Wilkins was not eligible to attend
8    services due to safety concerns, David's October 7, 2015, chrono provides
     critical context to that response. (See ECF No. 82 Ex. A; see also Skebe
9    Decl. ¶ 8, Ex. B.) In that chrono, David writes that Wilkins is not eligible
     to participate in Jewish studies in B-yard because "he is very threatening
10   and verbally aggressive in the way he is talking every time I see him" and
     "I'm concern[ed] to the safety of me and my congregants and I don't wish
11   to put anyone in danger next to him." (Skebe Decl. ¶ 8, Ex. B.) Wilkins's
     verbally aggressive and threatening behavior was further documented by
12   Defendant David in a September 30, 2015, informational chrono
     pertaining to his interview of Wilkins in SAC-B-15-0277, attached as part
13   of the OOA file produced herewith and summarized in the first level
     response to that appeal detailed in Defendants' moving papers. (Skebe
14   Decl. ¶ 7, Ex. A; see also ECF No. 68-1 at 22-23, DSUF 68-2 ¶ 20.)
         And although Wilkins disputes it, evidence demonstrates that
15   Defendant David did attempt to facilitate Wilkins's attendance at services
     both prior to Wilkins's threatening behavior culminating in David
16   deeming him ineligible to attend services on October 7, 2015, and then
     again with the second level adjudication [of] Wilkin's appeal SAC-B-15-
17   02776 on January 11, 2016. (See ECF No. 68-1 at 14-15; DSUF ECF No.
     68-2 ¶¶ 19-20, 22-23; see also Pl.'s Decl. ECF No. 77 Ex. G at 58.)
18       Taken altogether, this evidence further supports Defendants'
     argument that Wilkins lacks any evidence that Defendant David
19   discriminated against him because he was an EOP inmate. Indeed, this
     evidence affirmatively demonstrates that Defendant David, for a time at
20   least, deemed Wilkins ineligible to attend services in the yard due to his
     threatening and verbally aggressive behavior. (See Skebe Decl. ¶ 8, Ex.
21   B.) Such actions—attempting to keep himself and his congregants safe
     from an inmate repeatedly demonstrating threatening and verbally
22   aggressive behavior—fulfills a legitimate penological purpose. Because
     this evidence demonstrates that Defendant David precluded Wilkins from
23   service attendance, not because of he was and EOP inmate, but because he
     was threatening and verbally aggressive, and because that preclusion
24   fulfilled a legitimate penological purpose of keeping others safe, summary
     judgment on Wilkins's Fourteenth Amendment Equal Protection claim
25   against David remains appropriate. Village of Willowbrook v. Olech, 528
     U.S. 562, 564 (2000); see also Barren v. Harrington, 152 F.3d 1193, 1194
26   (9th Cir. 1998).

27   ECF No. 85, pgs. 15-16.

28   / / /

As explained above, the required subjective element of Plaintiff's equal protection claim requires proof that Defendant David intended to discriminate against Plaintiff because he is an EOP inmate.  In arguing that they are entitled to judgment as a matter of law on Plaintiff's equal protection claim, Defendants focus exclusively on this element.  The Court does so as well and does not evaluate whether Plaintiff is a member of a protected class, assuming that to be the case here.

The issue, then, is whether Plaintiff's case survives the sufficiency-of-the-evidence test involved with a motion for summary judgment.  The Court is satisfied, based on the arguments recited above, the supporting evidence, and Plaintiff's allegations, that Defendants have met their initial burden on summary judgment of demonstrating the non-existence of a genuine dispute as to whether Defendant David harbored an intent to discriminate against EOP inmates.

To this point, Defendants have demonstrated that Plaintiff lacks any evidence to prove David harbored a discriminatory intent.  As reflected in the timeline above, which is based on all the evidence adduced in this case, Defendant David for the most part attempted to facilitate Plaintiff's access to religious services.  When access was not provided, the timeline reflects the existence of a non-discriminatory reason, such Plaintiff's hostility and scheduling conflicts.

The evidence – including the undisputed missing October 14, 2015, response by Defendant David – indicates that, at some point during the relevant time period, Plaintiff was not taken for religious services by unnamed officers due to an apparent mistaken belief on the part of those unnamed officers that EOP inmates were not permitted to attend religious services.  Whether this is true or not has not been established and, in any event, is irrelevant.  What is relevant is whether Plaintiff has produced any evidence that it was Defendant David who denied access for this reason.  Plaintiff has failed to do so.  To the extent the missing October 14, 2015, response is as Plaintiff represents, at most it would confirm that other unnamed officers held a mistaken belief as to EOP inmates' access to religious services.

/ / /

/ / /

Defendants have met their initial burden on summary judgment of showing that the undisputed evidence reveals Plaintiff's ability to prove an essential element of his equal protection claim – Defendant David's subjective intent to discriminate.  Plaintiff has failed to meet his burden to produce evidence establishing a genuine dispute as to this material fact.  The Court finds that Defendant David is entitled to judgment as matter of law on Plaintiff's equal protection claim.

**B.      Plaintiff's Motion for Reconsideration**

The Court may grant reconsideration under Federal Rules of Civil Procedure 59(e) and 60.  Generally, a motion for reconsideration of a final judgment is appropriately brought under Federal Rule of Civil Procedure 59(e).  See Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir. 1985) (discussing reconsideration of summary judgment); see also Schroeder v. McDonald, 55 F.3d 454, 458-59 (9th Cir. 1995).  The motion must be filed no later than twenty-eight (28) days after entry of the judgment.[8]  See Fed. R. Civ. P. 59(e).  Under Rule 59(e), three grounds may justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.[9]  See Kern-Tulare Water Dist. v. City of Bakersfield, 634 F. Supp. 656, 665 (E.D. Cal. 1986), rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987), cert. denied, 486 U.S. 1015 (1988); see also 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999); accord School Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

/ / /

/ / /

/ / /

---

[8]      Pursuant to Houston v. Lack, 487 U.S. 266 (1988), for pro se prisoner litigants seeking reconsideration, the court calculates the 28-day period from the date the motion was delivered to prison authorities for mailing to the court.  Otherwise, the 28-day period is calculated based on the date the motion for reconsideration is actually filed.

[9]      If reconsideration is sought based on new evidence which could not have been discovered through due diligence in time to move for reconsideration under Rule 59(e), relief may be available under Federal Rule of Civil Procedure 60(b)(2).  A motion under Rule 60(b)(2) may not be brought more than one year after entry of judgment.

1    Under Rule 60(a), the Court may grant reconsideration of final judgments and any

2  order based on clerical mistakes.  Relief under this rule can be granted on the Court's own

3  motion and at any time.  See Fed. R. Civ. P. 60(a).  However, once an appeal has been filed and

4  docketed, leave of the appellate court is required to correct clerical mistakes while the appeal is

5  pending.  See id.

6    Under Rule 60(b), the Court may grant reconsideration of a final judgment and

7  any order based on: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly

8  discovered evidence which, with reasonable diligence, could not have been discovered within ten

9  days of entry of judgment; and (3) fraud, misrepresentation, or misconduct of an opposing party.

10  See Fed. R. Civ. P. 60(b)(1)-(3).  A motion for reconsideration on any of these grounds must be

11  brought within one year of entry of judgment or the order being challenged.  See Fed. R. Civ. P.

12  60(c)(1).  Under Rule 60(b), the Court may also grant reconsideration if: (1) the judgment is

13  void; (2) the judgement has been satisfied, released, or discharged, an earlier judgment has been

14  reversed or vacated, or applying the judgment prospectively is no longer equitable; and (3) any

15  other reason that justifies relief.  See Fed. R. Civ. P. 60(b)(4)-(6).  A motion for reconsideration

16  on any of these grounds must be brought "within a reasonable time."  Fed. R. Civ. P. 60(c)(1).

17    Here, Plaintiff specifically states that his motion is brought under Rule 60(b)(6).

18  See ECF No. 81, pg. 1.  Specifically, Plaintiff claims that newly discovery evidence justifies

19  allowing his conspiracy claims to proceed.  See id. at 1-2.  Plaintiff does not attach any new

20  evidence to his motion.  Instead, Plaintiff attaches as Exhibit A a proposed stipulation presented

21  to defense counsel to allow previously dismissed claims to proceed.  See id. at 4-5.  Defendants

22  oppose Plaintiff's motion.  See ECF No. 85.  Defendants argue that Plaintiff has not provided new

23  evidence and that he was granted several opportunities to amend his conspiracy claims to allege

24  additional supporting facts but failed to do so.  See id.  Defendants also note that Plaintiff's

25  motion is untimely.  See id.

26  / / /

27  / / /

28  / / /

34

1         The Court agrees that Plaintiff's motion is untimely under the catch-all provision

2 of Rule 60(b)(6).  Motions under Rule 60(b)(6) must be filed within a reasonable time of the

3 order being challenged.  See Fed. R. Civ. P. 60(c)(1).  Here, Plaintiff challenges the District

4 Judge's December 2, 2019, order.  Plaintiff motion, however, was not filed until August 22, 2022,

5 which is over two-and-a-half years after the order for which reconsideration is sought.  Given

6 Plaintiff's failure to explain the delay, the Court finds that Plaintiff's motion was not filed within

7 a reasonable time.

8         Plaintiff's contention that he first learned of the basis for his motion for

9 reconsideration "while opposing Defendants' summary judgment motion" does not change the

10 Court's conclusion.  Defendants filed their motion in May 2022 and Plaintiff filed his opposition

11 in July 2022.  See ECF Nos. 68, 74, and 77.  Plaintiff has not explained what facts he uncovered

12 between May and July 2022 that supports his dismissed conspiracy claims.  Indeed, Plaintiff cites

13 "new evidence" in his motion but does not attach such evidence.  Nor has Plaintiff explained what

14 he uncovered between the close of discovery, when he would have had access to the Defendants'

15 universe of evidence, and the dispositive motion filing deadline.

16         Absent some kind of offer of proof, the Court is left to view Plaintiff's motion as

17 based on what he could have known and when.  In this regard the Court notes that Plaintiff knew

18 about the defects in his conspiracy claims and was provided several opportunities to amend prior

19 to the December 2, 2019, order being challenged.  Moreover, Plaintiff declined to avail himself of

20 the last such opportunity, choosing instead to proceed on cognizable claims alleged in the second

21 amended complaint and acquiesce to dismissal of the conspiracy claims.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1

## IV.  CONCLUSION

2          Based on the foregoing, the undersigned recommends that:

3          1.          Defendants' motion for summary judgment, ECF No. 68, be granted;

4          2.          Plaintiff's motion to allow previously dismissed claims to proceed, ECF

5 No. 81, be construed as a motion for reconsideration and, so construed, be denied as untimely;

6          3.          The remaining pending motion, ECF No. 82, be denied as moot; and

7          4.          Judgement be entered in favor of Defendants.

8          These findings and recommendations are submitted to the United States District

9 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

10 after being served with these findings and recommendations, any party may file written objections

11 with the Court.  Responses to objections shall be filed within 14 days after service of objections.

12 Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

13 Ylst, 951 F.2d 1153 (9th Cir. 1991).

14

15 Dated:  March 15, 2023

16                                                        _____
                                                        DENNIS M. COTA
17                                                        UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28